UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

STEPHANIE B.,[1]

               Plaintiff,

     v.

ANDREW M. SAUL, the Commissioner
of Social Security,[2]

               Defendant.

No.   4:19-CV-05039-EFS

**ORDER DENYING PLAINTIFF'S
SUMMARY-JUDGMENT MOTION
AND GRANTING DEFENDANT'S
SUMMARY-JUDGMENT MOTION**

      Before the Court are the parties' cross summary-judgment motions.[3]

Plaintiff Stephanie B. appeals the denial of benefits by the Administrative Law

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to her by

first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration.

Accordingly, the Court substitutes Andrew M. Saul as the Defendant. *See* Fed. R.

Civ. P. 25(d).

[3] ECF Nos. 9 & 10.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

Judge (ALJ). She alleges the ALJ erred by 1) improperly weighing the medical opinions; 2) discounting Plaintiff's symptom reports; 3) failing to properly consider lay statements; and 4) improperly determining step five based on an incomplete hypothetical question to the vocational expert. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court denies Plaintiff's Motion for Summary Judgment, ECF No. 9, and grants the Commissioner's Motion for Summary Judgment, ECF No. 10.

## I.  Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[4] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[5] If the claimant is engaged in substantial gainful activity, benefits are denied.[6] If not, the disability-evaluation proceeds to step two.[7]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical

---

[4] 20 C.F.R. §§ 404.1520(a), 416.920(a).

[5] *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[6] *Id.* §§ 404.1520(b), 416.920(b).

[7] *Id.* §§ 404.1520(b), 416.920(b).

or mental ability to do basic work activities.[8] If the claimant does not, benefits are denied. [9] If the claimant does, the disability-evaluation proceeds to step three.[10]

Step three compares the claimant's impairment(s) to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[11] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[12] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[13] If the claimant is able to perform prior work, benefits are denied.[14] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

Step five, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—in

---

[8] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[9] *Id.* §§ 404.1520(c), 416.920(c).

[10] *Id.* §§ 404.1520(c), 416.920(c).

[11] *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[12] *Id.* §§ 404.1520(d), 416.920(d).

[13] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[14] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

light of the claimant's RFC, age, education, and work experience.[15] If so, benefits are denied. If not, benefits are granted.[16]

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[17] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[18]

If there is medical evidence of drug or alcohol addiction (DAA), the ALJ must then determine whether DAA is a material factor contributing to the disability.[19] To determine whether DAA is a material factor contributing to the disability, the ALJ evaluates which of the current physical and mental limitations would remain if the claimant stopped using drugs or alcohol and then determines whether any or all of the remaining limitations would be disabling.[20] Social Security claimants may not receive benefits if the remaining limitations without DAA would *not* be

---

[15] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[16] 20 C.F.R. §§ 404.1520(g), 416.920(g).

[17] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[18] *Id.*

[19] 20 C.F.R. §§ 404.1535(a), 416.935(a).

[20] 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2).

disabling.[21] The claimant has the burden of showing that DAA is not a material contributing factor to disability.[22]

## II.    Factual and Procedural Summary

Plaintiff filed a Title II and XVI application, alleging a disability onset date of April 1, 2015.[23] Plaintiff meets the insured status requirements through September 30, 2009.[24] Her claim was denied initially and upon reconsideration.[25] An administrative hearing was held before Administrative Law Judge Donna Walker.[26]

In denying Plaintiff's disability claims, the ALJ made the following findings:

- Step one: Plaintiff had not engaged in substantial gainful activity since April 1, 2005, the alleged onset date;

- Step two: Plaintiff had the following medically determinable severe impairments: major depressive disorder, generalized anxiety disorder, attention deficit hyperactivity disorder (ADHD), combined post-

---

[21] 42 U.S.C. §§ 423(d)(2)(C); 20 C.F.R. §§ 404.1535, 416.935(b); *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998).

[22] *Parra*, 481 F.3d at 748.

[23] AR 15.

[24] AR 17.

[25] AR 137 & 141.

[26] AR 38.

traumatic stress disorder (PTSD), disorders of reading, math, and written expression, and methamphetamine abuse;

- Step three: Plaintiff's impairments, including the substance use disorder, meet Listings 12.04, 12.06, 12.11, and 12.15. However, the ALJ found that if Plaintiff stopped the substance use, she would not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

- RFC: if Plaintiff stopped the substance use, Plaintiff would have the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations:

    Regarding mental abilities, she has the ability to understand, remember, or apply information that is simple and routine, consistent with SVP 1-2 skill level. Regarding interaction with others, she would work best in an environment in proximity to, but not close cooperation, with co-workers and supervisors, and must work in an environment away from the public. Regarding the ability to concentrate, persist or maintain pace, she has the ability, with legally required breaks, to focus attention on work activities and stay on task at a sustained rate; complete tasks in a timely manner; sustain an ordinary routine; regularly attend work; and work a full day without needing more than the allotted number or length of rest periods. Regarding the ability to adapt or manage, she work[s] best in an environment that is routine and predictable. She should not be required to perform fast-paced, production-quota work, and her work must be non-managerial, with no independent decision making.

- Step four: Plaintiff does not have past relevant work; and

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff was capable of performing work that existed in

significant numbers in the national economy, if she stopped substance abuse, such as janitor and floor waxer.[27]

When assessing the medical-opinion evidence, the ALJ gave:

- great weight to the opinions of the testifying medical expert, Nancy Winfrey, Ph.D., and the reviewing opinions of the state agency consultants, Michael Regets, Ph.D. and Dan Donahue, Ph.D.;

- some weight to the evaluating opinions of Philip Barnard, Ph.D., Kyle Sullivan, CDMHP, and Novita Peters, CDMHP; and

- little weight to the evaluating opinion of David Lowe, LMHC, and the examining opinion of Tae-Im Moon, Ph.D.

The ALJ also found that if Plaintiff stopped the substance abuse, Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[28] And the ALJ gave little weight to the lay testimony of Plaintiff's mother.

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[29] Plaintiff timely appealed to this Court.

---

[27] AR 15-32.

[28] AR 29.

[29] AR 1.

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[30] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[31] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[32] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[33] The Court considers the entire record as a whole.[34]

---

[30] 42 U.S.C. § 405(g).

[31] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[32] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[33] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[34] *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

Further, the Court may not reverse an ALJ decision due to a harmless error.[35] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[36] The party appealing the ALJ's decision generally bears the burden of establishing harm.[37]

## IV.    Analysis

## A.    Medical Opinions: Plaintiff fails to establish consequential error.

Plaintiff faults the ALJ for improperly discounting the opinions of Dr. Winfrey, Dr. Moon, Dr. Barnard, and Mr. Lowe.

The weighing of medical-source opinions is dependent upon the nature of the medical relationship, i.e., 1) a treating physician; 2) an examining physician who examines but did not treat the claimant; and 3) a non-examining physician who neither treated nor examined the claimant.[38] Generally, more weight is given to the opinion of a treating physician than to the opinion of a non-treating physician.[39] When a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and when it is contradicted, it may not be rejected without "specific and legitimate reasons"

---

[35] *Molina*, 674 F.3d at 1111.

[36] *Id.* at 1115 (quotation and citation omitted).

[37] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

[38] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

[39] *Id.*

supported by substantial evidence in the record.[40] The opinion of a nonexamining physician serves as substantial evidence if it is supported by other independent evidence in the record.[41]

As discussed below, the Court finds Plaintiff fails to establish that the ALJ's weighing of the medical-opinion evidence was erroneous.

1.  Dr. Winfrey

Dr. Winfrey testified as a medical expert after reviewing the entire medical evidence of record. Dr. Winfrey opined that when Plaintiff was using methamphetamine, she had marked mental limitations, but that when Plaintiff was clean and sober, she had moderate mental limitations, in the following activities: understanding, remembering, and applying information; interacting with others; concentrating persisting, or maintaining pace; and adapting or managing oneself.[42] Based on these mental limitations, Dr. Winfrey opined that Plaintiff, without substance abuse, was capable of performing simple, routine, repetitive tasks in a routine, low stress, non-fast paced, environment.[43]

Plaintiff argues the ALJ rejected a portion of Dr. Winfrey's testimony as it relates to Dr. Moon in that "Dr. Winfrey testified that Dr. Moon's opinion was the

---

[40] *Id.*

[41] *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

[42] AR 49-51.

[43] AR 51.

best evidence as far as Plaintiff's functioning in the absence of substance abuse."[44] However, Dr. Winfrey testified that "perhaps" Dr. Moon's evaluation was best evidence along with Plaintiff "actually working" during that time period. In addition, as explained above, Dr. Winfrey offered her own conclusions as to Plaintiff's functioning when sober after consideration of the entire longitudinal medical record, which included considering Dr. Moon's assessment. Thus, Plaintiff fails to establish that the ALJ erred in her understanding of Dr. Winfrey's opinion.

2. <u>Dr. Moon</u>

Dr. Moon performed a psychological evaluation of Plaintiff on October 25, 2015. Dr. Moon reported a diagnosis of Stimulant Related Disorder, amphetamine-type substance, in partial remission, in controlled environment; Rule out Bipolar II Disorder; Attention-Deficity Hyperactivity Disorder (ADHD), combined presentation; and Posttraumatic Stress Disorder (PTSD). Dr. Moon opined that Plaintiff had moderate limitations in the following activities: understanding, remembering, and persisting in tasks by following short and simple instructions; learning new tasks; performing routine tasks without special supervision; adapting to changes at work, making simple work-related decisions; being aware of normal hazards and taking appropriate precautions; asking simple questions or requesting assistance; and maintaining appropriate behavior in a work setting. Dr. Moon also opined that Plaintiff had marked limitations in the following basic work activities:

---

[44] ECF No. 9 at 13.

understanding, remembering, and persisting in tasks by following detailed instructions; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances without special supervision; communicating and performing effectively in a work setting; completing a normal work day and work week without interruptions from psychological based symptoms; and setting realistic goals and planning independently. Dr. Moon further opined that these impairments were not the primary result of alcohol or drug use in the past sixty days.

The ALJ discounted Dr. Moon's opinion because 1) it was inconsistent with the record as a whole; 2) it did not assess Plaintiff's functioning in the absence of substance abuse; 3) and the form completed by Dr. Moon indicated it was only for the purpose of determining eligibility for assistance for Washington State Department of Social and Health Services (DSHS) and not any other concerns.

First, the ALJ's finding that Dr. Moon's opinion was inconsistent with the record as a whole is rational and supported by substantial evidence. As discussed above, the ALJ credited the opinions of Dr. Winfrey, who reviewed the record as a whole and gave medical opinions contrary to Dr. Moon's opinions. The ALJ also credited the opinions of Dr. Regets and Dan Donahue who gave opinions contrary to Dr. Moon's opinions.[45] Even if Plaintiff can identify evidence that can be interpreted

---

[45] Dr. Donahue and Dr. Regets opined that Plaintiff had the following moderate mental limitations: Plaintiff was capable of simple and semi-complex tasks; her

more favorably to Plaintiff's position, the evidence is susceptible to more than one rational interpretation, and therefore the ALJ's ultimate conclusion must be upheld.[46] The ALJ did not err in discrediting Dr. Moon's psychological evaluation as not being supported by the longitudinal record.

Second, although the ALJ mistakenly believed that Dr. Moon did not assess Plaintiff's functioning in the absence of substance abuse, the minor error does not necessitate remand in light of the fact that the ALJ explained that even if Dr. Moon "indicated his opinion of up to marked mental limitations applied in the absence of substance abuse," as explained above, "it was still inconsistent with the record as a whole" supporting the ALJ's discrediting of Dr. Moon's psychological evaluation.[47]

Third, the ALJ erred when it discredited Dr. Moon's opinion because it was completed for the purpose of DSHS.[48] The error, however, is harmless. As discussed

---

concentration persistence, and pace may wax and wane with depression and ADHD, but not to the point of preventing all work activity; and she would do best with superficial, infrequent contact with others and with additional time to adjust to changes in the workplace. AR 79-87 & 122-23. Plaintiff does not challenge the opinions of Dr. Donahue and Dr. Regets.

[46] *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

[47] AR 30.

[48] *See Godwin v. Colvin*, No. 2017 WL 343641, *4 (E.D. Wash. Jan. 23, 2017) (citing *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995)).

above, the ALJ cited other specific, legitimate reasons supported by substantial evidence which support the ALJ's rejection of Dr. Moon's opinion.[49]

Plaintiff fails to establish that the ALJ erred by discounting Dr. Moon's opinions.

3.   Dr. Barnard

Dr. Barnard performed a psychological evaluation of Plaintiff on February 14, 2006.[50] Dr. Barnard reported the established diagnosis of Anxiety Disorder, NOS – mixed anxiety and depressive disorder, PTSD, ADHD/Predominately Inattentive Type, Reading Disorder, Mathematics Disorder of Written Expression, and Dependent Personality Disorder.[51] Dr. Barnard opined that Plaintiff had moderate limitations in the following activities: ability to understand, remember and follow simple (one or two step) instructions; ability to learn new tasks; and ability to perform routine tasks. Dr. Barnard also opined that Plaintiff had marked limitations in the following activities: ability to understand, remember and follow complex (more than two step) instructions; and the ability to exercise judgment and make

---

[49] *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998) (In the absence of other evidence undermining the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it.)

[50] *See* AR 338-42.

[51] AR 340.

decisions.[52] Based on these mental limitations, Dr. Barnard opined that it was improbable that Plaintiff could obtain and maintain employment on a gainful basis.

The ALJ discounted Dr. Barnard's opinion because 1) it did not assess the role of substance abuse in Plaintiff's symptoms; and 2) it was before the date of Plaintiff's Title XVI application.[53]

First, the ALJ's finding that Dr. Barnard did not assess the role of substance abuse in Plaintiff's symptoms is a rational finding supported by substantial evidence. If there is evidence of drug addiction or alcoholism, the ALJ must determine whether the drug addiction or alcoholism is a contributing factor.[54] To do this, the ALJ evaluates the plaintiff's current physical and mental limitations and determines if any or all would remain if plaintiff stopped using drugs or alcohol.[55]

---

[52] AR 341.

[53] AR 30. The Court notes the ALJ rejected the opinions of Kyle Sullivan, CDMHP, and Novita Peters, CDMHP, on the same grounds as Dr. Barnard's opinion. AR 30. However, Plaintiff does not challenge the ALJ's weighing of the opinions of Mr. Sullivan or Ms. Peters.

[54] *See* 20 C.F.R. § 404.1535.

[55] *Id.*

Here, the record indicates Plaintiff reported substance both prior and post Dr. Barnard's evaluation.[56] Because the ALJ must determine the role substance abuse plays in Plaintiff's metal impairments, discounting Dr. Barnard's opinion because it did not assess the role of substance abuse is a legitimate reason supported by substantial evidence which supports the discounting of Dr. Barnard's opinion.

Second, the ALJ erred when it discredited Dr. Barnard's opinion because it was completed in 2006 before the date of Plaintiff's Title XVI application because the 2006 opinion is within the relevant timeframe, as the alleged onset date is April 1, 2005, with a date last insured of September 30, 2009. Nevertheless, this error is harmless where, as discussed above, the ALJ lists an additional reason, supported by substantial evidence, for discounting Dr. Barnard's opinion.

4.   Mr. Lowe

Mr. Lowe performed an assessment of Plaintiff on December 13, 2016. Mr. Lowe opined Plaintiff's mental conditions limited her ability to work, look for work, or prepare for work, and that Plaintiff was limited to 1-10 hours of participation in

_____

[56] AR 371 ("[Plaintiff] reported she used meth, marijuana and cocaine as a teen. She last smoked meth from Nov. to Dec. of 2010."); AR 373 (Plaintiff reported being on probation for a DUI in 2006); AR 380 (Plaintiff has a history of methamphetamine abuse); AR 467 (report indicating Plaintiff as a past methamphetamine user); AR 552 (Plaintiff reporting past use of methamphetamine); AR 61 (Plaintiff reported most recent relapse was in 2017).

work-related activities per week.[57] Mr. Lowe further opined Plaintiff's conditions would likely limit Plaintiffs ability to work, look for work, or train to work, for six months. Mr. Lowe noted Plaintiff was attending intensive outpatient treatment three days a week.

The ALJ discounted Mr. Lowe's assessment because he opined that Plaintiff would be limited in her ability to work for a six-month period.[58] Temporary limitations are not enough to meet the durational requirement for a finding of disability.[59] The ALJ noted that Mr. Lowe's opinion does, however, further support a disabling mental limitations with substance abuse.[60] Plaintiff does not address the ALJ's finding regarding Mr. Lowe's temporary limitations, and instead focuses her argument solely on whether the ALJ erred in finding Mr. Lowe's evaluation was cursory.[61] Because Mr. Lowe indicated that Plaintiff's opined restrictions were not

---

[57] AR 1297.

[58] AR 29.

[59] 20 C.F.R. § 416.905(a) (requiring a claimant's impairment to be expected to last for a continuous period of not less than twelve months); 42 U.S.C. § 423(d)(1)(A) (same); *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1115, 1165 (9th Cir. 2008) (affirming the ALJ's finding that treating physicians' short-term excuse for work was not indicative of "claimant's long-term functioning").

[60] AR 29.

[61] ECF No. 9 at 15.

permanent restrictions or expected to last for a continuous period of not less than twelve months, the ALJ reasonably discounted Mr. Lowe's opinion.

**B.    Plaintiff's Symptom Reports: Plaintiff fails to establish error.**

Plaintiff argues the ALJ failed to provide valid reasons for rejecting her symptom reports. When examining a claimant's symptom reports, the ALJ must make a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[62] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[63]

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms inconsistent with the objective medical evidence and other evidence in the record.[64] As the ALJ discussed, the objective medical evidence is inconsistent with Plaintiff's reported disabling symptoms. Here, the ALJ found that, in the absence of methamphetamine use, Plaintiff had notable improvement in her mental symptoms. For example, during periods of

---

[62] *Molina*, 674 F.3d at 1112.

[63] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

[64] AR 29.

reported sobriety, Plaintiff reported her depression symptoms were controlled with medication and denied any thoughts of suicide. Also during times of reported sobriety, assessments conducted reported Plaintiff appeared oriented to time person, place and situation, exhibited normal insight and judgment, and demonstrated appropriate mood and affect.[65] In addition, the ALJ noted Plaintiff's lack of compliance with recommended treatment.[66] These were clear and convincing reasons, supported by substantial evidence, to discount Plaintiff's reported disabling symptom reports.

Plaintiff fails to establish he ALJ erred by discounting Plaintiff's symptom reports.

## C. Lay Witness Testimony: Plaintiff fails to establish error.

An ALJ must consider the testimony of lay witnesses in determining how an impairment affects the claimant's ability to work, and, if the lay witness statements

---

[65] AR 339, 513, 837, 902, & 947.

[66] *See Molina*, 674 F.3d at 1113-14; *see also Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (an ALJ may consider a claimant's unexplained or inadequately explained failure to follow a prescribed course of treatment when assessing a claimant's credibility); *see for example* AR 695 (Plaintiff reports since being released from inpatient treatment, she has not been consistent with any of her psychotropic medications. "She reports that she would often forget to take medications or that she would be too lazy to take them.").

are rejected, the ALJ must give germane reasons for discounting such statements.[67] Plaintiff argues the ALJ failed to provide a germane reason for discounting the lay witness statement from Plaintiff's mother.

The ALJ assigned little weight to Plaintiff's mother's statements because they essentially mirrored those of Plaintiff, did not discuss the role of significant drug abuse, and are not an acceptable medical source.[68] Because these statements are similar to Plaintiff's symptom reports, and the ALJ properly discounted Plaintiff's symptom reports for clear and convincing reasons, the ALJ needed only to point to the same reasons for discounting Plaintiff's mother's statements.[69] These were germane reasons for discounting Plaintiff's mother's statements.

## D.    Step Five: Plaintiff fails to establish error.

Plaintiff argues that the ALJ's hypothetical failed to take into account the limitations set forth by improperly rejected medical sources. However, this argument merely restates Plaintiff's earlier allegations of error, which are not supported by

---

[67] *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

[68] AR 30-31.

[69] *See Molina*, 674 F.3d at 1114; *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

the record. Accordingly, the ALJ's hypothetical properly accounted for the limitations supported by the record.[70]

## V.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 9**, is **DENIED**.

2.    Defendant's Motion for Summary Judgment, **ECF No. 10**, is **GRANTED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

4.    The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to file this Order, provide copies to all counsel, and close the file.

**DATED** this 4th  day of March 2020.

<u>          s/Edward F. Shea          </u>
EDWARD F. SHEA
Senior United States District Judge

---

[70] *See Magallanes*, 881 F.2d at 756–57 (holding it is proper for the ALJ to limit a hypothetical to those restrictions supported by substantial evidence in the record).